Rel: 10/24/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————

1130098

————————————

Cameron Givianpour

v.

Thomas J. Curtain, Sr.

**Appeal from Jefferson Circuit Court
(CV-12-900647)**

PARKER, Justice.[1]

---

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice Parker on September 9, 2014.

1130098

Cameron Givianpour appeals from the Jefferson Circuit Court's dismissal of his complaint for the redemption of certain real property. We reverse and remand.

I. Facts and Procedural History

At a foreclosure sale held on March 1, 2011, Thomas J. Curtain, Sr., purchased the real property located on Caldwell Mill Road, Mountain Brook, for $295,000 ("the property"). The foreclosed mortgagors were Charles Givianpour and Concetta Givianpour, Cameron Givianpour's parents.

It is undisputed that during their ownership of the property, the Givianpours leased the property to Amy Newell. After Curtain foreclosed on the property, he filed a complaint against Newell in the Jefferson Circuit Court in which he demanded possession of the property, as well as "damages for wrongful retention of said real property." On July 15, 2011, Newell filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern Division of the Northern District of Alabama ("the bankruptcy court"). On July 29, 2011, Curtain filed in the bankruptcy court a motion seeking a relief from the automatic stay; the bankruptcy court on August 9, 2011, granted the motion and lifted the stay. On

2

1130098

November 10, 2011, the Jefferson Circuit Court entered a summary judgment in favor of Curtain, awarding him possession of the property and damages. On December 14, 2011, the bankruptcy court discharged Newell's debt, including any rent owed for continued possession of the property.

On February 8, 2012, pursuant to § 6-5-252, Ala. Code 1975,[2] Cameron Givianpour presented Curtain with a demand for

_____

[2]Section 6-5-252 provides:

"Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all claims or right to compensation for improvements, and the party so entitled to redeem may, on the expiration of the 10 days, file his or her complaint without a tender to enforce his or her rights under this article and file a lis pendens with the probate court.

"Tender or suit must be made or filed within one year from foreclosure."

3

lawful charges for the purpose of redeeming the property.[3] On February 13, 2012, Curtain presented Givianpour a statement in the amount of $351,925.10, which amount included the purchase price, interest, insurance, and ad valorem taxes on the property. The statement also included a charge for payment of rent on the property for tenant Newell in the amount of $4,950: $450 per month from March 1, 2011, through January 31, 2012 ("the rent charge").

Givianpour did not tender the redemption funds to Curtain. Instead, on February 29, 2012, Givianpour filed a complaint in the Jefferson Circuit Court against Curtain seeking to redeem the property. In his complaint, Givianpour alleged that the rent charge constituted an illegal or exaggerated charge for which no legal basis exists. Givianpour stated that because of the allegedly unlawful

_____

[3]Cameron Givianpour had statutory authority to exercise his parents' right of redemption pursuant to § 6-5-248(a)(7), Ala. Code 1975, which states:

"(a) Where real estate, or any interest therein, is sold the same may be redeemed by:

"....

"(7) Children, heirs, or devisees of any debtor or mortgagor."

4

charge he was "unable to ascertain the true amount of the lawful charges owed" and that he "need[ed] the Court's assistance to determine the amount of lawful charges properly owed." Givianpour further stated that he was "ready to do equity and pay all lawful charges to redeem the property." Givianpour did not pay any of the redemption funds into the circuit court as is generally done in accordance with § 6-5-256, Ala. Code 1975,[4] when a written statement of all debt and charges is provided to the redemptioner.

On March 13, 2012, Curtain filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment on the Pleadings." The motion alleged, among other things, that the circuit court lacked subject-matter jurisdiction under § 6-5-256 because Givianpour had failed either to tender the amount for redemption or to pay the amount for redemption into court

---

[4]Section 6-5-256 provides:

"Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, if the written statement thereof has been furnished or, if not furnished, offering to pay such debt or purchase price and all lawful charges, the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article."

5

with the filing of his complaint. The motion asserted that Givianpour was "only contesting the $4,950.00 claimed for rent and therefore does not have a valid excuse for not tendering money into the Court, but could have tendered the minimum amount due for redemption." The motion further asserted that because Givianpour had failed to comply "with all the condition precedents to redemption," his complaint for redemption was due to be dismissed.

On May 13, 2013, the circuit court entered an order denying Curtain's motion for a judgment on the pleadings but granting his motion to dismiss Givianpour's complaint for lack of subject-matter jurisdiction. As to the former, the circuit court denied the motion on the ground that the pleadings were not "closed" as of March 13, 2012, the date the motion was filed. As to the latter, the circuit court agreed with Curtain that Givianpour's failure to pay the amount for redemption into the court deprived the court of jurisdiction. Specifically, the circuit court stated that "[p]er Ala. Code 1975, § 6-5-256, an Alabama Circuit Court is not vested with jurisdiction over a disputed redemption amount claim unless the redeemer/plaintiff simultaneously pays into Court the

6

charges presented, or if disputed, the amount that is not disputed." The circuit court further observed that Alabama courts have held that strict compliance with § 6-5-256 is "excused only where the redeemer/plaintiff can demonstrate a valid excuse for not paying the full redemption amount." Relying on this Court's decision in Moore v. Horton, 491 So. 2d 921 (Ala. 1986), the circuit court concluded that even though the rent charge was "either improper, or questionable, or both," it was "of easy verification." The circuit court thus concluded that Givianpour "failed to exercise due diligence to ascertain the proper amount to tender into court on February 29, 2012, when he filed this action without tendering the amount owed," and that he "has not demonstrated any valid excuse" for that failure.

On June 11, 2013, Givianpour filed a motion to alter, amend, or vacate the circuit court's judgment. In the motion, Givianpour emphasized the fact that the parties disagreed as to whether the rent charge was a "lawful charge" under § 6-5-253, Ala. Code 1975.[5] Givianpour also argued, for the

---

[5]Section 6-5-253 provides, in part:

"(a) Anyone entitled and desiring to redeem real estate under the provisions of this article must

also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10[, Ala. Code 1975] (as it is now or hereinafter may be amended), and all other lawful charges, also with interest as aforesaid; lawful charges are the following:

"(1) Permanent improvements as prescribed herein.

"(2) Taxes paid or assessed.

"(3) All insurance premiums paid or owed by the purchaser.

"(4) Any other valid lien or encumbrance paid or owned by such purchaser or his or her transferee or if the redeeming party is a judgment creditor or junior mortgagee or any transferee thereof, then all recorded judgments, recorded mortgages and recorded liens having a higher priority in existence at the time of sale which are revived under Section 6-5-248(c)[, Ala. Code 1975].

"If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also pay any balance due on the debt, with interest as aforesaid thereon to date.

"(5) Mortgagees of the purchaser, or their transferees, are considered transferees of the purchaser, and a party redeeming must pay all mortgages made by the purchaser or his or her transferee on the land to the extent of the purchase price.

1130098

first time, that the charge for insurance had not been "prorated" and that "[t]he statement of lawful charges does not state the dates on which the premiums begin or end, nor [does it] reflect the regularity of when they are paid or when they are owed." The circuit court held a hearing on the motion on June 26, 2013.

On September 6, 2013, the circuit court entered an order denying Givianpour's motion to alter, amend, or vacate its original judgment. In pertinent part, the order stated:

---

"If the purchaser's mortgages do not exceed the amount of the purchase price, the balance must be paid to the purchaser.

"(b) If the redeeming party is the debtor, mortgagor, their respective spouses, children, heirs, or devisees then, unless otherwise provided herein, the judgments, mortgages, and liens revived pursuant to 6-5-248(d)[, Ala. Code 1975,] are not lawful charges as defined in subsection (a).

"(c) The purchaser shall be entitled to all rents paid or accrued including oil and gas or mineral agreement rentals to the date of the redemption, and the rents must be prorated to such date. The purchaser or his or her transferee and his or her tenants shall have the right to harvest and gather the crops grown by them on the place for the year in which the redemption is made, but must pay a reasonable rent for the lands for the proportion of the current year to which such redemptioner may be entitled."

9

"In this case, the Court determined certain of the charges claimed were easily computed and not in dispute. The law does not preclude [Givianpour] from paying undisputed charges, and, by his own admission, Givianpour had the money to pay those charges. While [Givianpour] is certainly entitled to dispute the rents due and property insurance money paid, the very nature of this statute is to 'pay the amount' into Court, and then let the Court determine proper charges due. As such, the Court agrees with Curtain [that] the charges claimed included undisputed amounts and/or amounts readily ascertainable by Givianpour. Therefore, [Givianpour's motion] is due to be denied."

Givianpour appeals the circuit court's judgment of May 13, 2013, dismissing Givianpour's complaint; he also challenges its denial of his motion to alter, amend, or vacate that order.

## II. Standard of Review

"A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So. 2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So. 2d at 299."

Newman v. Savas, 878 So. 2d 1147, 1148-49 (Ala. 2003).

## III. Analysis

1130098

Givianpour contends that the rent charge listed in the statement provided by Curtain is not a "lawful charge" under § 6-5-253 and that the presence of such an unlawful charge in the statement constitutes a valid excuse for his not tendering any amount for redemption when he filed the complaint. Curtain argues that the rent charge _is_ a "lawful charge" under § 6-5-253(c) and that, even if it is not, the readily ascertainable amount of the unlawful charge -- $4,950 -- means that the charge does not qualify as a valid excuse for failing to pay into court the amount not in dispute, i.e., $346,975.10.

We begin by determining whether the rent charge was a "lawful charge" under § 6-5-253. That Code section expressly lists five categories of lawful charges: permanent improvements, taxes paid or assessed, insurance premiums paid or owed by the purchaser, any other valid lien or encumbrance paid or owned by the purchaser, and "all mortgages made by the purchaser or his or her transferee on the land to the extent of the purchase price." § 6-5-253(a). Curtain implicitly concedes that the rent charge does not fall under the "lawful charges" specifically listed in § 6-5-253(a). Instead, he

11

1130098

contends that the rental charge is lawful under § 6-5-253(c), which provides:

> "(c) The purchaser shall be entitled to all rents paid or accrued including oil and gas or mineral agreement rentals to the date of the redemption, and the rents must be prorated to such date. The purchaser or his or her transferee and his or her tenants shall have the right to harvest and gather the crops grown by them on the place for the year in which the redemption is made, but must pay a reasonable rent for the lands for the proportion of the current year to which such redemptioner may be entitled."

The initial issue here is one of statutory construction.

> "'Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"

Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)). "Ala. Code 1975, § 6-5-253(c), provides that the purchaser is entitled to all rents paid or accrued on the property until the date of redemption. The redemptioner is entitled to all rents and profits accruing subsequent to the redemption date." Pankey

12

v. Daugette, 671 So. 2d 684, 689 (Ala. Civ. App. 1995) (citing Wallace v. Beasley, 439 So. 2d 133, 136 (Ala. 1983)).

Curtain is essentially reading § 6-5-253(c) to state not only that he is "entitled to" any rent that accrued during the period after he purchased the property until the date of redemption, but also that he can lawfully charge the redemptioner for any such rents that he is unable to collect from the tenant. Curtain cites no authority for such an interpretation of § 6-5-253(c), and a plain reading of the statute does not support it. Rent charges are not among the categories of "lawful charges" listed in § 6-5-253(a). Moreover, § 6-5-253(c) simply delineates which party, as between the purchaser and the redemptioner, is entitled to rents collected or accrued before and after the date of redemption. Curtain already pursued in the circuit court the individual responsible for paying the rental charge: Amy Newell, the tenant. See, e.g., Moss v. Cedrom Coal Co., 228 Ala. 267, 269, 153 So. 195, 196 (1934) (discussing the fact that a tenant is responsible for paying rent to the purchaser if the tenant has "knowledge ... of said purchase and of the purchasers' rights thereunder"). The fact that Newell was

1130098

discharged of this debt in bankruptcy does not give Curtain a legal right to charge Givianpour for the unpaid rent. Thus, the rent charge Curtain submitted in his statement of charges to Givianpour was not a lawful charge.

The next question before us is whether the inclusion in the statement of an unlawful charge for rent on the property constituted a valid excuse for Givianpour not to pay into court any amount included in the statement when he filed his complaint for redemption. Answering the foregoing question requires some background in Alabama's jurisprudence on redemption.

This Court has stated that "[t]he purpose of the redemption statutes is to allow a defaulting purchaser, with certain restrictions, the opportunity to redeem property that has been lost by foreclosure. Indeed, statutory rights of redemption are intended to 'rescue' from 'sacrifice' the property of a debtor." Spencer v. West Alabama Props., Inc., 564 So. 2d 425, 427 (Ala. 1990). On their face, §§ 6-5-252 and 6-5-253(a) do not provide an exception to the requirement that a redeeming party tender to the purchaser at foreclosure the purchase price and all lawful charges as specified by the

14

purchaser. The only exception from the requirement in 6-5-256 that a redemptioner pay into court "the amount of purchase money and the interest necessary for redemption and all lawful charges" upon filing a complaint for redemption is if the purchaser fails to provide the redemptioner with a statement of charges within 10 days of a demand for one. See § 6-5-252. Because of the aforementioned purpose of the redemption statutes, however, this Court repeatedly has stated:

> "'"Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of some fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply."'"

Watts v. Rudulph Real Estate, Inc., 675 So. 2d 411, 413 (Ala. 1996) (quoting Garvich v. Assocs. Fin. Servs. Co., 435 So. 2d 30, 33 (Ala. 1983), quoting in turn Rodgers v. Stahmer, 235 Ala. 332, 333, 179 So. 229, 230 (1938)).

15

1130098

The first case to provide a detailed explanation as to when a redemptioner is permitted to forgo tendering into court the amount necessary to redeem was <u>Francis v. White</u>, 160 Ala. 523, 526-27, 49 So. 334 (1909).[6] In <u>Francis</u>, this Court explained:

"The statute ... contemplates that the redemption be perfected out of court between the parties by each party's doing that which the statute directs. <u>A resort to equity is only necessary when the purchaser or creditor refuses to accept the tender and to convey, and declines to inform the debtor of the amount necessary to be tendered, when known to him and not to the debtor, or when it is impossible or impracticable for the debtor to conform to the requirements of the statute without the aid of a court of equity</u>. If the debtor could be sure that he had paid or tendered all that the statute requires, this payment or tender would have the effect, under the very language of the statute, to reinvest him with the title, and the purchaser must reconvey to him. Code 1896, § 3507. It is most often the case that resort is had to equity to perfect the statutory right, because without the aid of the court the debtor cannot know the exact amount necessary to be paid or tendered. The main object of the bill is often to ascertain this fact. <u>If the debtor knows the exact amount which he must pay or tender, or if by the exercise of due diligence he</u>

_____

[6]The Court of Civil Appeals has noted that "[a]lthough the redemption statutory provisions have been amended, and/or repealed and reenacted from time to time, the substance of the statutory provisions at issue have not changed." <u>Skelton v. J&G, LLC</u>, 922 So. 2d 926, 931 n. 7 (Ala. Civ. App. 2005). Because previous cases were interpreting redemption statutes not materially different than the current ones, those cases constitute precedent on this subject.

16

> can ascertain it without the aid of the court, then his bill for this purpose would be without equity. Equity will not undertake to do that which the debtor should have done for himself. So, in the bill to redeem under the statute, the debtor must either aver a payment or a tender of all the amounts by the statute required, or to show a valid excuse for failure therein, before filing, such as nonresidency of purchaser, or redemptioner's inability to ascertain the amounts necessary to be paid or tendered, and ask the court to aid him in ascertaining the true amounts, and offer to pay such amounts before insisting upon his right to redeem or to be reinvested with the title. Francis v. White, 142 Ala. 590, 39 South. 174 [(1905)]. Payment or tender of the amounts necessary to redeem is not in all cases a prerequisite to the filing or maintaining of the bill, yet it is always such to the perfection of the right to redeem, and the bill must offer to pay or tender such amounts when ascertained, and show a valid excuse for not so doing before the filing of the bill as well as a good reason why the aid of the court is necessary for this special purpose."

160 Ala. at 526-27, 49 So. at 335 (emphasis added). In Moore v. Horton, 491 So. 2d 921, 923 (Ala. 1986), this Court summarized the explanation in Francis as follows: "[I]n order to redeem under the statute, one must either aver a payment or tender of all the amounts required by the statute, or show a valid excuse for failure to do so."[7]

---

[7]As demonstrated by the following summary of Alabama law in Wiltsie on Mortgage Foreclosure, we note that this principle of law has long been well established in Alabama:

"[I]n an action to enforce the statutory right of

17

In concluding that the rent charge did not constitute a "valid excuse" for failing to pay the statutorily required amount into court, the circuit court relied on a statement in Moore that "the inclusion of improper or questionable charges is not, in and of itself, a valid excuse for failure to tender the amount owed." Id. at 924. Moore, in turn, relied upon

---

redemption, there must be an allegation of tender prior to action; Crumpton v. Campbell, 228 Ala. 79, 152 So. 220 [(1934)]; Foerster v. Swift, 216 Ala. 228, 113 So. 31 [(1927)]; see Seals v. Rogers, [172 Ala. 651,] 55 So. 417 [(1911)]; Lacey v. Lacey ..., 39 So. 922 [(Ala. 1905)(not reported in Alabama Reports)]; or of excuse for failure to make such tender. Rodgers v. Stahmer, [235 Ala. 332,] 179 So. 229 [(1938)]; Goodwin v. Donohue 229 Ala. 66, 155 So. 587 [(1934)]; Hart v. Jackson Street Baptist Church of Birmingham, Ala., Inc., 224 Ala. 64, 139 So. 88 [(1932)]; Wittmeier v. Cranford, 199 Ala. 1, 73 So. 981 [(1917)].

"And in addition to alleging a tender, the bill must show payment into court, where such payment is not excused. Lacey [sic] v. Fowler, 206 Ala. 679, 91 So. 593 [(1921)]. See Wittmeier v. Cranford, supra.

"A mortgagor seeking to redeem is excused from alleging a tender where he avers that he did not know the correct amount to be tendered, and that the mortgagee's itemized statement (required by statute) was excessive and obscure. Southside Bank v. Daniel, 221 Ala. 327, 128 So. 779 [(1930)]."

3 A.W. Fribourg and S.V. Elting, Wiltsie on Mortgage Foreclosure § 1259, at pp. 1892-93 n. 64 (5th ed. 1939).

Johnson v. Williams, 212 Ala. 319, 321, 102 So. 527, 528 (1924). In Johnson, the redemptioner did not tender any amount before filing a complaint. She contended that payment was excused because a judgment the purchaser obtained against her husband in a separate action for $328.76 and a $.95 fee for recording the foreclosure deed that was listed in the statement of charges did not constitute lawful charges. The Johnson Court first concluded that it did not read the notation in the purchaser's statement of the separate judgment against the redemptioner's husband to be "a condition precedent for statutory redemption." Johnson, 212 Ala. at 321, 102 So. at 528. As to the recording fee, the Court stated that it

> "was not a proper charge or expense, was not within the statute (Snow v. Montesano Land Co., [206 Ala. 310, 89 So. 719 (1921)]), and was of easy elimination by the redemptioner in making the tender. The amount of interest was of easy verification. The complainant has shown no excuse which the law recognizes for failure to aver a tender; and by the exercise of due diligence she could have ascertained the necessary and required amount without the aid of equity."

Id.

In Moore, the redemptioner likewise failed to tender any amount into court before filing her complaint. She contended

1130098

that "because of the failure [of the purchaser] to specifically and fairly itemize the lawful charges, she was unable to determine what amount she needed to tender." 491 So. 2d at 923. In response, the Moore Court quoted a portion of the Francis Court's explanation of when equity may be invoked in the redemption process, followed by the quotation of much of the passage from Johnson quoted above. The Moore Court then stated:

> "Therefore, the inclusion of improper or questionable charges is not, in and of itself, a valid excuse for failure to tender the amount owed. There must be an exercise of due diligence on the part of the person seeking redemption to ascertain the proper amount to be tendered. In a more recent decision, Dicie v. Morris, 285 Ala. 650, 235 So. 2d 796 (1970), this Court stated that there must be a bona fide disagreement between the parties as to what the lawful charges were before one side could seek the aid of the court. Moore has presented this Court with no proof of any such disagreement; moreover, the Hortons have stated that had Moore offered an amount which they considered reasonable, the matter might well have been settled at that time. It appears to us that, had Moore undertaken a diligent inquiry, she might well have been able to ascertain the proper amount due to be paid to the Hortons. We hold that there was ample support for the trial court's findings that Moore failed to comply with the statutory prerequisites to redemption and that she failed to allege sufficient grounds to excuse the statutorily required tender."

491 So. 2d at 924 (emphasis added).

20

In its order of May 13, 2013, the circuit court concluded that because the rent charge was "of easy verification," Givianpour "failed to exercise due diligence to ascertain the proper amount to tender into court ...." In its order of September 6, 2013, the circuit court similarly concluded that "certain of the charges claimed were easily computed and not in dispute" and that, therefore, Givianpour should have paid the "undisputed charges" and allowed the court to "determine the proper charges due." In so holding, the circuit court misunderstood the holdings in Johnson and Moore.

In both Johnson and Moore, the Court concluded that the redemptioner failed to demonstrate that there was a "bona fide disagreement between the parties as to what the lawful charges were." Moore, 491 So. 2d at 924. In Johnson, there was not even a colorable argument that the recording fee was a lawful charge. In Moore, the redemptioner apparently failed to explain which charges the parties disagreed about or the basis for the disagreement on those charges. Under those circumstances, "the inclusion of improper or questionable charges is not ... a valid excuse for failure to tender the amount owed." Moore, 491 So. 2d at 924.

21

1130098

Unlike Johnson and Moore, in the present action it is clear that Givianpour and Curtain legitimately disagree as to whether the rent charge is a lawful charge under the statute. As explained in Francis, when the redemptioner presents a valid excuse for failing to tender the statutorily required amount, tender is not required to invoke the aid of the court. In contrast, although the circuit court acknowledged that the rental charge was "questionable," it reasoned that Givianpour should have forwarded the undisputed amount into court before he could receive the court's aid in determining whether the rent charge was lawful. In other words, the circuit court agreed with Curtain's argument that a charge must not only be unlawful, but also unclear in amount for such a charge to constitute a valid excuse for failing to tender the redemption amount.

Previous cases do not support the circuit court's conclusion. Several cases hold that the presence of an unlawful charge in the purchaser's statement -- not just charges that are difficult to ascertain without the aid of a court -- constitutes a valid excuse for not tendering the redemption amount.

22

1130098

For example, in Beavers v. Transamerica Financial Services, Inc., 474 So. 2d 1105 (Ala. 1985), the Beaverses purchased the subject property at a foreclosure sale. Transamerica Financial Services, Inc., which held a second mortgage on the property, gave the Beaverses notice of its desire to redeem the property, but the parties could not agree on the proper redemption amount, and Transamerica filed a complaint for redemption. When Transamerica filed its complaint, it paid into court what it thought to be the statutorily required amount, which was placed in an interest-bearing account at Transamerica's request. The dispute over lawful charges included the date for calculating interest, whether Transamerica was entitled to credit for rents the Beaverses had collected on the property, and whether the trial court was correct in returning to Transamerica the interest that had been earned on the sum Transamerica had deposited with the court upon the filing of the complaint for redemption. Thus, all the disputed charges were "of easy verification." In addressing the issue of which party was entitled to the interest on the sum Transamerica had deposited into court, the Beavers Court noted that "[i]t is accepted law

23

... that a redemptioner need not always tender the redemption amount into the court." Beavers, 474 So. 2d at 1108. The Court quoted Francis for support of this proposition. The Court then observed that, because Transamerica was "in good faith disagreement over the redemption amount," it "was not required to tender the funds into the court." 474 So. 2d at 1108-09. The fact that Transamerica was not required to tender any amount, combined with the fact that "§ 6-5-235[, repealed effective January 1, 1989; now § 6-5-253] does not include such interest among the items comprising the redemption amount," led the Court to conclude that "the trial court correctly returned the excess escrow money to Transamerica." Id. Thus, in Beavers, the Court concluded that the redemptioner was not required to pay any redemption amount into court because of a "good faith disagreement over the redemption amount," even though the amount in dispute was easily calculable.

Similarly, in Dicie v. Morris, 285 Ala. 650, 654, 235 So. 2d 796, 799 (1970), the Court concluded:

> "In our opinion the bill avers a valid excuse as to why these amounts were not paid or tendered before its filing, and the proof supports this averment. The parties were in bona fide disagreement

24

> as to what were lawful charges, and also, as to the amounts of some charges. A resort to equity was necessary to decide these issues, or the appellant, in the alternative, stood to either pay what she considered unlawful charges, or lose her right to redeem. This shows a valid excuse for failure to pay or tender into court the amounts required by the statute."

(Emphasis added.)

In Lavretta v. L. Hammel Dry Goods Co., 243 Ala. 34, 36, 8 So. 2d 264, 265 (1942), the Court noted that "[w]hen the statement of lawful charges claimed includes exaggerated or illegal demands, or if so questionable that the redemptioner acting in good faith cannot reasonably ascertain the amount he should tender for redemption, no tender need be made before filing a bill to redeem." (Emphasis added.) Applying that rule to the facts presented in that case, the Lavretta Court reasoned:

> "The transfer, itself is conclusive to the effect that the debt and deficiency judgment were not owned by L. Hammel Dry Goods Company within the purview of the statute, and, for that reason, was not a lawful charge on redemption from the vendee of the mortgagee purchaser. Tender and payment into court were therefore excused."

Id. (emphasis added). See also Davis v. Anderson, 678 So. 2d 140, 143 (Ala. Civ. App. 1995) (noting that "if the redeeming party claims that the lawful charges claimed by the purchaser

25

include exaggerated or illegal demands, no tender is required to be made before filing a complaint to redeem"); Nichols v. Colvin, 674 So. 2d 576, 579 (Ala. Civ. App. 1995) (quoting Lavretta, 243 Ala. at 36, 8 So. 2d at 265).

As noted above, the circuit court expressly held, and Curtain repeatedly insists in his brief to this Court, that Givianpour was required to pay the undisputed amount into court and then allow the circuit court to determine whether the rent charge was lawful. Once again, however, our cases do not support this conclusion.

In Wallace v. Beasley, 439 So. 2d 133 (Ala. 1983), the redemptioner, Wallace, filed a complaint because he disagreed with the Beasleys' assessment of the value of permanent improvements they had made since purchasing the real property. Wallace did not pay any amount into court. The parties stipulated to an undisputed amount of $11,353.72, but they disagreed as to the Beasleys' assessment of over $20,000 for permanent improvements. The Beasleys argued that Wallace's complaint for redemption was not proper because he failed to pay any amount into court and, they argued, he did not provide an adequate excuse for his failure to do so. The Court found

26

"the Beasleys' contention to be without merit, since, reviewing the record, we are satisfied that the redemptioner provided a sufficient excuse -- that there was a bona fide disagreement as to the amount of lawful charges due in this case." 439 So. 2d at 136. The Wallace Court did not indicate that Wallace needed to pay the amount that was not disputed into court in order to receive a ruling on the amount that was in dispute.

In Dorrough v. Barnett, 216 Ala. 599, 114 So. 198 (1927), the Court stated:

> "[I]t is now settled that tender or payment into court of admitted or readily ascertained portions of the full amount required to redeem is not required, if other charges are in dispute, and must be determined in equity before the redemptioner can know the full terms upon which he must redeem the property."

Dorrough, 216 Ala. at 601, 114 So. at 200.

On rehearing in Slaughter v. Webb, 205 Ala. 334, 337, 87 So. 854, 856 (1921) (opinion on rehearing), the purchaser argued that a predecessor statute to § 6-5-252 "requires the payment into court of debt, interest, and all other lawful charges as a condition to redemption in all cases, and that, if the amount of some charges cannot be ascertained, then the

27

payment into court of such as can be ascertained." 205 Ala. at 337, 87 So. at 856. In other words, the purchaser made the same argument on rehearing that Curtain presented to the circuit court and now presents to this Court. The Slaughter Court seemed incredulous that it would have to answer such an argument, stating: "Heretofore we had hardly deemed it necessary to answer this argument. We read [the predecessor statute to § 6-5-252] to mean that, if a written statement of lawful charges has not been furnished, an offer to pay debt and all lawful charges made in the bill will suffice." Id. After discussing a few cases cited in its original opinion, including Francis, the Court concluded in its opinion on rehearing:

> "[The purchaser] cannot find in these cases, or in the amended statutes, any authority for the doctrine that the party coming to redeem must make a partial tender before filing his bill, or with his bill when filed, though he is unable to ascertain the total amount of lawful charges due; that he must offer to give up, or give up if need be, money, though he does not know that ultimately he will be allowed to redeem or on what terms he may be allowed to redeem. The law against partial redemptions was stated in Prichard v. Sweeney,[109 Ala. 651, 656, 19 So. 730, 732 (1896),] cited in the original opinion, and it could never have been reasonably conceived to be otherwise."

28

_Id._ (emphasis added).  See also 59A C.J.S. Mortgages § 1456 (2009) (stating that, in Alabama, "[t]ender or payment into court of admitted or readily ascertained portions of the full amount required to redeem is not required if other charges are in dispute and must be determined in equity before the redemptioner can know the full terms on which he or she must redeem the property." (citing Wallace v. Beasley, 439 So. 2d 133 (Ala. 1983))).

Curtain's only response to these authorities is to cite Johnson, noting that the Johnson Court stated that the unlawful charge of $.95 for the recording fee "was of easy elimination by the redemptioner in making the tender."  212 Ala. at 321, 102 So. at 528.  As we already observed, however, in Johnson no colorable argument existed that a recording fee for the foreclosure deed was a lawful charge.  Thus, there was no bona fide disagreement between the parties as to the amount of tender.  In this case, Curtain argued to the circuit court, and he argues to this Court, that the rent charge was a lawful charge under § 6-5-253(c), a subsection that expressly references "rents paid or accrued ... to the date of redemption."  The existence of a bona fide disagreement in

this case over the rent charge means that the charge was not "of easy elimination by the redemptioner." Furthermore, to the degree that Johnson could be read as requiring a partial payment of the undisputed amount, Wallace and Dorrough clearly state the contrary and were decided after Johnson.

In sum, our jurisprudence reflects that an unlawful charge need not be uncertain in its amount in order to constitute a valid excuse for not tendering the redemption amount into court. Additionally, our cases provide that partial payment for the undisputed amount is not required to invoke the jurisdiction of the circuit court to receive a determination concerning the disputed amount. The circuit court erred in concluding otherwise.

## IV. Conclusion

We conclude that the rent charge on Curtain's statement for redemption constituted an unlawful charge, that such an unlawful charge, over which there is a bona fide disagreement, constitutes a valid excuse for failure to tender the redemption amount or to pay it into court, and that payment of the amount not in dispute is not required to invoke the jurisdiction of the circuit court to settle the disputed

30

1130098

amount. Accordingly, the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Moore, C.J., and Stuart, Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.